UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| | ) | |
| FUNDS IN THE AMOUNT OF $109,730 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by Zachary T. Fardon, United States Attorney for the Northern District of Illinois, for its verified complaint for forfeiture against the above-named defendant property alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**Nature of the Action**

1. This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of funds in the amount of $109,730 United States currency.

2. This complaint is verified by the attached affidavit of Special Agent ("SA") Timothy J. Oko of the Drug Enforcement Agency ("DEA"), which is fully incorporated herein.

**Jurisdiction and Venue**

3. This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5. Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found and seized within the Northern District of Illinois.

6. The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) were the proceeds from the sale of a controlled substance; and/or (iii) were funds used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 841, *et seq.*

**Factual Allegations**

7. Beginning in early 2013, the DEA began investigating the narcotics trafficking activities of a Mexican Drug Trafficking Organization ("DTO") involving the movement of drugs from Mexico to the United States, and the movement of drug proceeds to Mexico via commercial buses. Specifically, the DTO utilized United States Department of Transportation registration numbers for commercial buses used by the DTO to transport drugs primarily to Chicago and Atlanta, Georgia. The buses had hidden compartments in the underside of the bus to smuggle the drugs and drug proceeds.

8. For example, on September 14, 2013, the Alabama State Police conducted a traffic stop on a commercial bus utilized by the DTO traveling from Atlanta to Mexico which resulted in the seizure of approximately $1.26 million in cash secreted in the frame rails of the

bus. On February 22, 2013, the United States Customs and Border Patrol ("CBP") in Laredo, Texas, seized approximately 53.5 kilograms of cocaine secreted in the frame rails of a commercial bus controlled by the DTO to smuggle drugs bound for Chicago. The next day, February 23, 2013, the CBP in Laredo seized approximately 62.5 kilograms of cocaine secreted in a DTO controlled commercial bus bound for Chicago.

9. As part of the ongoing investigation, in early December 2013, the DEA received information from a cooperating individual ("CI") that the DTO was about to establish a "stash" house in the Chicago area to store drugs and currency for the DTO. DEA agents were later informed the stash house was located near Midway Airport, specifically on west 85th Street in Chicago.

10. On or about December 19, 2013, the CI provided further information to the DEA that a member of the DTO, later identified as Homero Brito-Guadarrama ("Brito"), had instructed members of the DTO to conduct a money pickup on the northside of Chicago and return the money to the stash house.

11. On December 19, 2013, at approximately 3:35 p.m., while conducting surveillance, DEA agents observed members of the DTO pickup up a black duffel bag from an unknown Hispanic individual in the alley in the vicinity of north LeClaire Avenue in Chicago. DEA agents observed the black duffel bag placed in a vehicle and returned to the stash house.

12. On December 19, 2013, at approximately 4:30 p.m., while conducting surveillance, DEA agents observed Brito arrive at and enter the stash house. DEA agents further observed the black duffel bag removed from the trunk of the vehicle and taken into the stash house.

13. On December 19, 2013, the CI further advised the black duffel bag contained $478,000 in United States currency and that the currency would remain in the stash house before being moved to Mexico.

14. On or about January 18, 2014, the CI provided further information that a portion of the $478,000 held at the stash house was to be picked up by an unknown Hispanic female at a at a McDonalds restaurant in Berwyn, Illinois.

15. On January 18, 2014, at approximately 6:00 p.m., while conducting surveillance at the McDonalds restaurant, DEA agents observed two female Hispanics, later identified as Kathleen Stephanie Gonzalez ("Gonzalez") and Stephanie Carmona, arrived in the McDonalds parking lot in a silver Hyundai Sonata. Gonzalez was observed handing the keys of the silver Hyundai Sonata to another individual, who they met in the parking lot, who drove Gonzalez's vehicle to another location where a box was placed into the trunk of Gonzalez's vehicle.

16. Subsequently, Gonzalez's vehicle was driven back to the McDonalds parking lot and returned the keys returned to Gonzalez. DEA agents then observed Gonzalez and Carmona depart the McDonalds parking lot, with Carmona driving the silver Hyundai Sonata.

17. On January 19, 2014, at approximately 7:40 p.m., DEA agents conducting surveillance observed the silver Hyundai Sonata arriving at a motel located on Belvidere Road in Waukegan, Illinois.

18. Subsequently, Illinois State Trooper Eric King and his canine "Onyx" conducted a canine sniff test on the exterior of the silver Hyundai Sonata while it was parked at the motel. Trooper King advised DEA agents that Onyx gave a positive alert for the presence of a narcotic odor at the outside trunk area on Gonzalez's vehicle.

19. Onyx was last certified in April 2013. Onyx is certified in the detection of several narcotic drugs, including cocaine, cannabis, and heroin. Onyx has made in excess of 40 positive alerts on drugs and currency.

20. On January 18, 2014, at approximately 7:45 p.m., DEA Task Force Officer ("TFO") Looney approached Gonzalez and Carmona in the parking lot of the motel and inquired about the contents of the vehicle. Carmona stated that the vehicle had just been rented and contained nothing illegal. TFO Looney then asked both Gonzalez and Carmona for consent to search the vehicle. At the time, both consented to a search of the vehicle. Carmona then provided the keys to the Hyundai Sonata to TFO Looney.

21. Upon a search of the trunk, DEA agents observed a box containing five vacuum sealed bags with an unknown amount of United States currency in each bag. When asked by DEA agents about the currency, both Gonzalez and Carmona denied any knowledge of the currency in the trunk. The currency was subsequently seized by the DEA.

22. The United States currency recovered from Gonzalez's Hyundai Sonata totaled $310,000 in United States currency bundled in the five vacuum sealed bags.

23. On January 28, 2014, at approximately 1:06 p.m., while conducting surveillance at a motel near Midway Airport where Birto was known to be staying, DEA agents observed a black Hyundai, Santa Fe, registered to Stephanie Gonzalez, arrive in the parking lot of the motel.

24. At approximately 1:07 p.m., DEA agents observed Brito entering a TGIF restaurant which is connected to the motel, carrying an Abercrombie shopping bag.

25. Within a few minutes of Brito entering the restaurant, DEA agents observed Gonzalez exit the passenger side of the Hyundai Santa Fe and enter the TGIF restaurant.

26. At approximately 1:10 p.m., Gonzalez exited the restaurant carrying the Abercrombie shopping bag, and re-entered the vehicle on the passenger side of the Hyundai Santa Fe. The vehicle then exited the parking lot.

27. On January 28, 2014, at approximately 1:20 p.m., DEA agents conducted a traffic stop of the Hyundai Santa Fe after the vehicle had made several surveillance detection maneuvers. At the time, DEA Special Agent Oko approached the passenger side of the vehicle and observed Gonzalez seated in the passenger seat with the Abercrombie shopping bag on the floor of the vehicle, situated between her legs.

28. Special Agent Oko requested Gonzalez to exit the vehicle. At the time, Oko observed that the Abercrombie bag contained numerous bundles of United States currency. Oko asked Gonzalez about the bag, to which Gonzalez replied that she knew the bag contained money, but did not know who it belonged to, or why it was in the vehicle.

29. On January 30, 2014, DEA Special Agent Robert Glynn and his canine "Rudy" conducted a narcotic odor investigation on the United States currency. Special Agent Glynn advised that "Rudy" gave a positive alert for the presence of narcotic odor from the seized currency.

30. Narcotic detector dog "Rudy" is owned by the DEA, and was last certified before this investigation on April 16, 2013. Since 2006, "Rudy" has made several hundred narcotic and narcotics related detections of currency and has several instances of no detection. Rudy's success rate of detection is in excess of 90 percent.

31. On January 28, 2014, DEA agents seized $109,730.00 in United States currency contained in the Abercrombie bag. The United States currency totaling $109,780 was in the

6

following denominations: 106 one hundred dollar bills; 33 fifty dollar bills; 4,632 twenty dollar bills; 364 ten dollar bills; 221 five dollar bills; and 95 one dollar bills.

32. Based upon the facts related above and the attached affidavit, the defendant funds in the amount of $109,730, were (i) monies furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) were proceeds from the sale of a controlled substance; and/or were monies used or intended to be used to facilitate a narcotics transaction in violation of 21 U.S.C. § 841, *et seq*., and therefore are forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America respectfully requests:

a. the defendant funds be proceeded against for forfeiture and condemnation;

b. due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

c. the court adjudge and decree that the defendant currency be forfeited to the United States and disposed of according to law; and

d. any trial be before a jury.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/Daniel E. May
DANIEL E. MAY
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-8694
daniel.may@usdoj.gov